LYDIA A. ESTABROOKS AND MAUDE S. ESTABROOKS. *v.* HENRY F. ESTABROOKS.

Special Term at St. Johnsbury, April, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed August 11, 1917.

*Wills—Intent of Testator—Right of Way—Construction of Devise.*

Testator devised to plaintiffs a right of way "as now used from said land to main street * * * * across the lot where I now reside." *Held,* the course of the right of way was to be determined by the then existing use, and that testator's intent was that plaintiffs should have the benefit of two different routes in use during his lifetime.

A right of way devised to plaintiffs as long as they should occupy certain premises is a personal right, and plaintiffs' conveyance of a part of the premises gives their grantees no interest in the right of way.

Where a right of way was devised to plaintiffs as long as they should occupy certain premises, they were entitled to the use of it as long as they occupied any part of the premises.

APPEAL IN CHANCERY. Heard on bill. Answer, replication, and facts found by the chancellor in vacation after the June Term, 1915, Caledonia County, *Miles,* Chancellor. Decree for plaintiffs. Defendant appealed. The opinion states the case.

*Porter, Witters & Harvey* for plaintiffs.

In construing the devise, such construction must be given to it, if possible, as will effectuate the testator's intent, and the language used is to be considered in connection with the situation of the parties, the surrounding circumstances, the subject-matter, the object to be accomplished, etc. *Clark* v. *Beck,* 41 Vt. 152; *Wales* v. *Bowdish,* 61 Vt. 23.

The sale of a part of plaintiffs' premises did not terminate the right of way. The word "occupy" has no hard and fast

definition. *Brinkerhoff* v. *Everett,* 38 Ill. 362; *Wright* v. *Milton,* 130 Mass. 552; *Welch* v. *Hodge,* 94 Mich. 493; *Commonwealth* v. *Weatherhead,* 110 Mass. 175; *Mettler* v. *Easton,* 24 N. S. Eq. 118; *O'Neill* v. *Cleveland,* 3 Nev. 492; *Walters* v. *People,* 18 Ill. 194, 65 Am. Dec. 730; *U. S.* v. *Soule et al.,* 30 Fed. 918; *Smith* v. *Sanger,* 4 N. Y. 577; *Robinson* v. *Briggs,* L. R. 6 Exch. 1; *Lawrence* v. *Fulton,* 19 Cal. 390; *McKenzie* v. *Brandon,* 71 Cal. 211; 2 Q. B. D. 588.

*Harry Blodgett, Dunnett & Shields* and *Walter W. Wesley* for defendant.

The right devised must be construed according to the terms of the will, only one right of way was given thereby. 14 Cyc. 1160, 1201, 1207; *Hotchkiss* v. *Young,* 42 Ore. 446, 71 Pac. 324; *Viall* v. *Carpenter,* 14 Gray 126; *Field* v. *Leiter,* 118 Ill. 17, 6 N. E. 877; *Clap* v. *McNeil,* 4 Mass. 589; *Agne* v. *Slitsinger,* 96 Iowa 181, 64 N. W. 836; *Brossart* v. *Corlett,* 27 Iowa 288; *Walker* v. *Pierce,* 38 Vt. 94; *Dunn* v. *English,* 23 N. J. Law 126; *Choate* v. *Burnham,* 7 Pick. (Mass.) 274.

The way granted was a conditional estate, Tiedman on Real Prop. Sec. 271; 2 Words and Phrases (1st series) 1397, and cases cited; 1 Words and Phrases (2nd series), p. 861; 13 Cyc. 691.

The easement was extinguished because the plaintiffs ceased to occupy the premises mentioned in the will, but only occupied a small portion thereof. 14 Cyc. 1190, 1194; *Long* v. *Louisville,* 98 Ky. 67, 32 S. W. 271; *Hahn* v. *Baker Lodge,* 21 Ore. 30, 27 Pac. 166; *Bangs* v. *Potter,* 135 Mass. 245; *Central Wharf Corp.* v. *India Wharf,* 123 Mass. 567; *Hall* v. *Armstrong,* 53 Conn. 554, 4 Atl. 113; *Colie* v. *Jamison,* 4 Hun. (N. Y.) 284; *Taylor* v. *Hampton,* 4 McCord (S. C.) 96, 17 Am. Dec. 710; *Steny* v. *Mahoney,* 114 Wis. 117, 89 N. W. 819; *Hoffman* v. *Savage,* 15 Mass. 130; *Newhoff* v. *Mayo,* 48 N. J. Eq. 619, 23 Atl. 265; 6 Words and Phrases (1st series) 4910 and cases cited; 3 Words and Phrases (2nd series) 688 and cases cited.

MUNSON, C. J.   The premises involved in this controversy were owned in one parcel by Warren Estabrooks, who was the father of the defendant and the father-in-law and grandfather respectively of the plaintiffs, and who died April 3, 1906, leav-

ing a will executed November 11, 1901. At the time the will was made the testator was occupying the premises devised to the defendant, and the plaintiffs were living on the premises devised to them, and enjoying the privilege which is the subject of the dispute.

The clause creating the easement is as follows: ''Also a right of way, as now used from said land to Main Street, in St. Johnsbury, across the lot where I now reside, to them and each of them so long as either of them shall live and occupy the premises aforesaid; and said right of way shall then terminate.'' It should be noticed here that the grant is of ''a right of way,'' without the designation of terminal points, and that its course from the plaintiffs' land across the servient estate is to be determined solely by the existing use; for these features of the grant are made the basis of important claims, to be taken up after the case has been fully stated.

The premises divided between these parties by Warren Estabrooks' will extended from Main Street easterly to North Pearl Street and Warren Avenue—the last being a street extending easterly from the north end of North Pearl Street nearly at a right angle. The lot devised to the plaintiffs was a projection of the property extending southerly along North Pearl Street, and bounded on the north by a line which was nearly in line with the south line of Warren Avenue. But the north part of this lot was separated from North Pearl Street by a triangular piece not owned by Warren Estabrooks, the base line of which was seventeen feet and the side lines about one hundred feet. This base line is practically a continuation to North Pearl Street of the line which bounded plaintiffs' lot on the north. The driveway through the defendant's land from Main Street to North Pearl Street enters that street at its junction with Warren Avenue, about fifteen feet north of the point where the line just described strikes North Pearl Street. The buildings occupied by the plaintiffs at the date of the will and until June 11, 1914, were located on the northerly end of their lot. A driveway extended from the barn around the rear end and north side of the house, and then curved to the north, and crossed the division line at the corner between the plaintiffs' lot and the triangular piece, and entered the defendant's driveway about eighteen feet from the line of North Pearl Street. There was a walk extending from the plaintiffs' driveway near the rear of the house, which entered the de-

fendant's driveway about sixty feet west of the driveway connec-
tion; but this walk has since been discontinued. There were
steps which led down to North Pearl Street from the lawn in
front of the house, crossing the triangular piece about twenty-
eight feet north from its point. A portion of the passage-way
leading to these steps was grassed over. It does not appear that
objection to the maintenance of the steps has been made by any-
one. The defendant has excepted to the chancellor's failure to
find that there was a concrete walk from the easterly front steps
connecting with the driveway; claiming that the existence of
such a walk is established by uncontradicted evidence.

The plaintiffs used the driveway leading from their build-
ings to the defendant's driveway, and the defendant's driveway
from the point of junction to Main Street, as their convenience
and necessities required, without let, hindrance or obstruction.
They also used the walk above described as a means of passing
between their house and the defendant's driveway in going to
and from Main Street. On coming from their driveway into
that of the defendant they sometimes turned to the right and
passed into North Pearl Street. The driveway between Main
Street and the plaintiffs' house was used by grocerymen, hack-
men and visitors, and for the delivery of coal. Grocerymen and
milkmen sometimes came up North Pearl Street, made their de-
liveries, and passed across to Main Street, and sometimes made
the trip in the reverse order. Hackmen engaged by the plaintiffs
would sometimes come up North Pearl Street, stop for the plain-
tiffs at the steps before described, and drive along to the North
Pearl Street entrance, and thence across to Main Street; and
would sometimes cross directly from Main Street to North Pearl
Street and thence to the steps, and receive the plaintiffs there.
The plaintiffs used all the described routes at their convenience.

The buildings occupied by Warren Estabrooks at the date of
the will and until his death, and since occupied by the defendant,
are located on Main Street, somewhat back from the street,
with the barn directly in the rear of the house; and the westerly
end of the driveway crossing the premises constitutes the de-
fendant's approach from Main Street to his buildings. At the
southeasterly corner of the barn is a gate connected with a farm-
yard, which has been used at times to close the right of way.

On the 11th day of June, 1914, the plaintiffs conveyed to
Mary Caldbeck the lot devised them by Warren Estabrooks, ex-

cepting a small lot in the southeast corner, and reserving their interest in certain springs and a right to remove the barn. Subsequent to the conveyance the barn was moved onto the lot not conveyed, and converted into a dwelling, and the plaintiffs have since resided there.

The will gives a right of way from the plaintiffs' land across the defendant's land to Main Street. Within such limits as these terms may be held to establish, the extent and location of the right are to be determined by the use then existing. The continuance of the right is conditioned upon the occupancy of the premises by the grantees of the right. The final question is whether the present occupancy meets the requirement of the will.

The plaintiffs claim that the right devised to them covered every line of approach by which they had been accustomed to reach the driveway crossing the defendant's land; that they had a right to make use of the public street between their steps and the entrance to the defendant's roadway as a connecting link between the two; and that the right to make use of that street remains to them, notwithstanding their transfer of that part of the premises which included their former dwelling and its approaches. The defendant argues that this is a grant of "a right of way," and not of two or more; that the way granted extended from the plaintiffs' premises across the defendant's land to Main Street, and not from Pearl Street across the defendant's land; that no right was given the plaintiffs to come upon the defendant's land from any other place than their own property.

For a series of years before and after the making of the will, and while the testator was living at the house now occupied by the defendant, the plaintiffs and those having business at their place came to and from the testator's driveway by way of North Pearl Street, as well as over the driveway which led directly from the plaintiffs' buildings to the testator's driveway. In these circumstances, the words "as now used from said land to Main Street * * * across the lot where I now reside," are not to be taken as capable of only one construction and so conclusive as regards the testator's intention. It is difficult to believe that one having the interest the testator had in these devisees intended that the delivery of their household supplies should be accomplished only by going in from Main Street and returning the same way, when their driveway entered his only eighteen feet from North Pearl Street. We think it was the intention of the

testator that the plaintiffs should have the use of the roadway between the two streets through both the ways of approach then in use.

It having been ascertained that the plaintiffs were entitled to use a section of North Pearl Street in connection with the way across the defendant's land while living in the dwelling since conveyed, the fact that their change of location to another part of the lot requires the use of a longer section of the street cannot of itself defeat the right. So we treat the remaining claim of the defendant as standing squarely upon the question of occupancy. By the terms of the will the plaintiffs are entitled to the right as long as they shall "occupy the premises aforesaid," and the premises referred to are described in the will as "the dwelling house, outbuildings and land where they now reside." The defendant argues that this language required the plaintiffs to remain in possession of the entire premises if they wished to retain the right, and that they do not now occupy the "aforesaid premises," but only a very small portion of them.

It is clear that the right to cross the defendant's lot was given for the personal benefit of the testator's daughter-in-law and granddaughter, and not for the benefit of the parcel devised to them. The right was conditioned upon their occupancy of the premises, and was to cease upon the death of the survivor. This right being personal, the plaintiffs' conveyance of a part of the premises gave their grantees no interest in the right of way. The plaintiffs' continued occupancy of the remainder of the lot presents the same situation as regards their personal benefit which the testator had in contemplation when he made his will. We think the testator intended that the plaintiffs should have access to and from Main Street over the driveway across his premises, through the North Pearl Street entrance, as long as they continued to occupy any part of the lot adjoining that street.

*Decree modified and affirmed as modified, and cause remanded with mandate.*